CARROLL, DONALD K., Judge.
The plaintiffs in seven actions, consolidated for appeal, seeking injunctive and declaratory relief, have appealed from adverse final judgments entered by the Circuit Court for Madison County.
The basic question presented for our determination in these appeals is whether the defendant tax assessor, who ignored the guidelines established by the Department of Revenue in assessing the appellants’ timber-lands in his county, has successfully carried his statutory burden of proving by a preponderance of the evidence that his assessments are correct.
In each of the seven cases the plaintiff challenges, as excessive and improperly made, the 1971 ad valorem tax assessed on the plaintiff’s timberlands aggregating approximately 160,000 acres in Madison County. With the exception of the appellant P. K. Lanier, all of the appellants arc companies engaged in the pulp or paper manufacturing industry. All of the lands involved in these seven cases were being utilized in bona fide forestry operations on January 1, 1971, and were zoned and assessed as agricultural under the provisions of Section 193.461(6), Florida Statutes F.S.A.
At a hearing before the trial court the defendant tax assessor testified that he made the timberland assessments on the appellants’ land by following the Tax Assessor’s Guide method as closely as he could, but he admitted that he declined to use the wood growth data from the Schu-macher-Coile growth tables set forth in the said guide, saying: “ . . . they did not fit my County. I don’t believe that Coile-Schumacher would fit this County.” Instead, he used a growth rate which he determined from his own investigation. He testified that he consulted the County Forester, but the latter testified that he told the assessor that Class I lands should be valued at about $97 an acre and Class II lands at $55 per acre, not $140 and $100 respectively as assessed by the assessor. The County Forester arrived at his values by application of the capitalized net income method set forth in the Tax Assessor’s Guide.
The defendant tax assessor admitted at the hearing that the maximum wood growth rate shown in the Schumachcr-Coile table for Northwest Florida was .71 cords per acre per year for Class I lands in Madison County, and admitted that the growth rate he used was “a cord to the acre” high or 1.71 cords per acre per year. Apparently the wood growth rates utilized by the assessor were greatly excessive and he was unable to provide any expert testimony or source material to substantiate his growth rates other than some studies made on wood growth for pines planted in “old fields.”
On the other hand, the appellants produced at the hearing expert testimony and the recognized source data referred to in the Tax Assessor’s Guide to substantiate the wood growth rates used by them in arriving at the values of their timberlands.
The difference in the wood growth rates used by the assessor and those used by the appellant accounts for the different values arrived at by the assessor and the appellants.
The parties hereto stipulated on the other factors, such as pulpwood stumpage price, management costs ($2.50) and capitalization rate (8.75%), to be used in the formula.
*381 The assessor tried to justify his assessments by evidence of land sales in Madison County, which line of evidence was admitted by the trial court over the appellants’ objections. None of these sales were shown to be comparable to the appellants’ timberlands. On cross-examination the assessor’s testimony revealed that he really did not know for what purpose most of these “comparable sale tracts” were purchased, and that most of the tracts were small farms. He admitted that he made no distinction between farm lands and large tracts of timberlands in his study of the so-called “comparable sales.” He was unable to show that any purchaser bought for the exclusive purpose of growing timber, other than sales to paper companies. A witness for the appellants, a qualified real estate appraiser, examined all of the sales referred to by the assessor, and found that all of them were “basically farmland,” as opposed to timberlands, and none were comparable to the timberlands owned and managed by the appellants.
The average per acre valuation of the timberlands involved here, was, according to the apepllants’ evidence, for Class I $82 per acre, Class II $55 per acre, which valuations closely corresponded to the values determined by the County Forester of $97 for Class I and Class II $55. By contrast, the assessor’s valuations, based upon his questionable information and calculations, were $140 for Class I and $100 for Class II. The assessor’s values for Classes III and IV similarly showed great disparity and certainly excessiveness compared to the evidence for the appellants.
In the light of the foregoing evidence, we hold that the defendant tax assessor improperly and illegally assessed the timber-lands owned by the appellants in Madison County, that he refused to follow and apply the standards established by the Department of Revenue of the State of Florida, and that he has failed to overcome the burden imposed upon him by statute to overcome the presumption (that the department’s standards are prima facie the standard measures of just valuation contemplated by the Florida Constitution) by a preponderance of the evidence. In fact, instead of overcoming that presumption, the evidence confirmed the presumption.
This legal situation basically arises out of the Article VII, Section 4, of the Florida Constitution, F.S.A., providing: “ . By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation.

Pursuant to this organic provision, the Florida Legislature enacted the following statute in implementation of that provision:
Section 195.032, Florida Statutes, F.S.A., provides:
“In furtherance of the requirement set out in § 195.002, the department of revenue shall establish and promulgate standard measures of value not inconsistent with those standards provided by law, to be used by tax assessors in all counties, including taxing districts, to assist them in arriving at assessments of all property. These standard measures of value shall be deemed and held prima facie to be the standard measures of just valuation contemplated by the constitution of this state in matters of taxation. Tax assessors and tax adjustment boards shall follow and apply such standard measures of value in arriving at assessments of all property, and the burden shall be upon any assessor or board of tax adjustment refusing to follow such standards to overcome the presumption by preponderance of the evidence.”
Section 195.111, Florida Statutes, F.S.A., provides:
“Purpose of this chapter. — It is hereby declared to be the legislative purpose and intent in this entire chapter to secure a just valuation and provide for a uniform and equal assessment as between property within each county or taxing district and as between property in each county and *382 property in every other county or taxing district.”
Section 195.042 provides:
“Rules and regulations. — The department of revenue shall prescribe reasonable rules and regulations for the assessing and collecting of taxes, and such rules and regulations shall be followed by the tax assessors, tax collectors, clerks of the circuit court, and boards of tax adjustment. It is hereby declared to be the legislative intent that the department is authorized to formulate such rules and regulations so that property taxes can be assessed, collected, and administered uniformly, justly, and otherwise in compliance with the requirements of the constitution.”
In many decisions the appellate courts of Florida have had occasion to recognize and apply the foregoing statutory provisions when county tax assessors have declined to follow the guidelines prescribed by the Department of Revenue, under the above provisions, in evaluating and assessing real property in their counties for the purpose of ad valorem taxation. One of the decisions involving a legal situation most nearly analogous to that in the present appeal is the decision of the Supreme Court of Florida in Reid v. Kirk, 257 So.2d 3 (Fla.1972), which was an action by the tax assessor of Palm Beach County against the Department of Revenue of Florida for a determination of his duties and obligations under directives promulgated by the department relative to the assessment of grazing lands within the Central and South Florida Flood Control District. The department, in conjunction with the State Comptroller, had adopted a range of grazing land assessments which were to apply to defined categories of land in the Flood Control District. The tax assessors in the counties affected were instructed to accept these rates, or explain why they would not be complied with in their respective jurisdictions. Assessor Reid responded that the ranges given were too low for Palm Beach County and announced that he would file suit for a declaratory judgment to decide the issue if the rates he suggested were not acceptable to the department. The ranges suggested by Reid were not acceptable to the department, and Reid filed the suit, which was transferred to the Circuit Court for Leon County.
Referring to this court’s decision in Department of Revenue v. Bell, 227 So.2d 684 (Fla.App.1969), the Supreme Court of Florida in the Reid case said:
“ . . . the essence of the statute operative in Bell and the instant case has not changed: the Comptroller is to establish and promulgate standard measures of value which are to be followed and applied in arriving at the assessments of all property by Tax Assessors, but while these values are deemed and held to be measures of just valuation, an assessor can refuse to follow the standards, but only if he can overcome the presumption of validity by a preponderance of the evidence. Fla.Stat. § 192.31(1) (1967); Fla. Stat. § 195.021(1) (1969); Fla.Stat. § 195.032 (effective 1971). We recognized in Burns v. Butscher, supra, 187 So.2d [594 (Fla.)] at 595 that while the Comptroller’s measures of value were declared to be prima facie evidence of just valua-ation, nonetheless, ‘Any assessor refusing to adhere to them assumes the burden of overcoming the presumption of their merit.’ ” (Emphasis not supplied.)
Finally, the Supreme Court in the Reid case held:
“The courts below have erred in assuming that the Comptroller’s measurements are irrefutable and not subject to challenge. Clearly an assessor is entitled by statute and case law to challenge the range of values he is instructed to use, although, and this is also clear, he will not be successful unless he can meet the required burden of proof. When the Leon County Circuit Court accepted the range of values contained in the directive arising out of the Bell litigation, it merely accepted that which is prima facie *383 evidence under the statute. This acceptance did not foreclose Reid from challenging these measures as they applied specifically to his county, nor did it foreclose h.im from seeking to meet his burden of proof in a judicial forum.” (Emphasis not supplied.)
In accordance with the doctrine recognized in the above Reid case, and in many other Florida appellate decisions, and because we hold that the tax assessor in the cases before us has clearly failed to meet the said burden of proof, the judgments appealed from herein are reversed, and these causes are remanded with directions for further proceedings consistent with the views hereinabove set forth.
Reversed and remanded with directions.
SPECTOR, C. J., concurs in reversal of judgment.
JOHNSON, J., concurs.