329 So.2d 26 (1976)
Jack DURRANCE et al., Appellants,
v.
Dorsey A. SANDERS, Jr., et Ux., Appellees.
Nos. W-495, W-496.
District Court of Appeal of Florida, First District.
March 30, 1976.
Rehearing Denied April 15, 1976.
*28 Delbridge L. Gibbs, of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellants.
James E. Clayton, of Clayton, Duncan, Joynston, Clayton, Quincey, Ireland & Felder, Gainesville, for appellees.
BOYER, Chief Judge.
Appellees, plaintiffs in the trial court, sued appellants on the theory of nuisance, claiming damages allegedly caused by smoke, odors, and pollution emanating from compost dumped by the other appellants on property owned by appellant Whitehurst adjacent to that belonging to appellees. From a final judgment based on a jury verdict in favor of appellees and from the denial of their motion for new trial, appellants have appealed, alleging that the trial court erred in admitting evidence of harmful bacteria found in the compost and of damages resulting from smoke and odors when the compost inexplicably caught fire. Appellees have cross-assigned as error the refusal of the trial court to tax as costs the witness fee charged by appellees' expert witness. The right of appellees to recover damages caused by the flies, odors, pollution and the like associated with the compost is not seriously questioned.
Appellants began dumping near appellees' homes in January of 1971. On February 13, 1971, the compost caught fire and burned for a week. Authorities were never able to determine the cause of the fire. While appellees' complaints alleged that the fire was of unknown origin, their expert witness at trial, Dr. Gilcreas, testified that it was possible that the material could have caught fire through spontaneous combustion. Appellants' expert, Dr. Knuth, stated at trial that spontaneous combustion was impossible.
Appellees also alleged in their complaints that the compost polluted their well water. Appellee Dr. Sanders, a veterinarian, testified that he conducted tests on his well water and concluded, although he did not keep written records of the tests, that the water contained bacteria. Appellee Mrs. Tooke testified that she boiled the drinking water obtained from her well for several months because of fear of contamination. Appellees' expert Dr. Gilcreas analyzed water samples from appellees' wells for the period between May of 1971 and September of 1972. He concluded from his analysis that the Tookes' water was uncontaminated while the Sanders' water was too polluted to drink in five out of fifteen samples. He further testified that the compost could have polluted the well, but that he could not prove it for certain. Because of his opinion that the compost presented a danger as a potential pollutant, he stated that he would condemn any water supply within 1,000 to 1,500 feet of the place where the pollutant was present. Appellants moved for a directed verdict after appellees had concluded the presentation of their case. When the trial court denied the motion for directed verdict, appellants presented their own experts who testified, in effect, that there would be very little, if any, chance of well pollution caused by bacteria from the compost. After closing arguments, appellants' counsel requested that the trial judge instruct the jury that no damages should be awarded for the drilling of a new well on Dr. Sanders' property since appellees did not establish a causal connection between the alleged pollution of Dr. Sanders' well and the existence of any pollutants in the compost. The trial court granted the request and instructed the jury accordingly.
The jury returned verdicts in favor of the Sanders in excess of $16,000 and for the Tookes in an amount exceeding *29 $19,000.[1] Appellees were allowed certain costs, but their requests for taxation of Dr. Gilcreas' fee were denied. Appellants' motions for new trial and/or remittitur were likewise denied.
Appellants' position is that the damages associated with the compost are recoverable, but that the injuries suffered by appellees when the compost caught fire are separate and distinct from the nuisance action and necessitate allegations and proof of negligence. Appellees assert that they are not seeking to recover damages from the fire, but only from the nuisance created by the odor and smoke.
Resolution of the question of recovery for damages caused by the fire begins with an analysis of that body of tort law known as "nuisance". While the term is not susceptible of easy definition, one authority has noted, "it [nuisance] has reference to the interest invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion." (Prosser on Torts § 88 (3rd Ed. 1964)) Although no particular type of conduct on behalf of the defendants is necessary to establish a nuisance, it is generally agreed that a nuisance may rest on an intentional invasion of a person's property rights, on negligence, or on conduct abnormal and out of place in its surroundings.
Thus, appellees are correct in claiming that the nuisance does not consist of the fire itself, whether started negligently or otherwise, but rather in the smoke, odors, etc., that inflicted the injury upon appellees. Nevertheless, a plaintiff in a nuisance action must demonstrate that the maintenance of the nuisance was the natural and proximate cause of the injury. (66 C.J.S. Nuisance § 8, p. 743) Our examination of the pleadings and the evidence adduced at trial lead us to the inescapable conclusion that the nuisance maintained by appellants (the piles of compost) was not proved to have proximately caused the injuries suffered by appellees as a result of the fire. Clearly, appellees were responsible for the compost and the damages associated with it. However, the fire is a different matter, even though appellees' complaints asserted that the fire was of unknown origin, they attempted to establish at trial that the compost caught fire by means of spontaneous combustion. At best, then, appellees have established the possibility of spontaneous combustion, which falls far short of a showing that the fire, and the smoke and odors associated therewith, were proximately caused by some activity on the part of appellants. The mere dumping of the compost did not cause the fire. There was no evidence presented at trial tending to show that any act of appellants, either intentional, negligent, or abnormal or out of place in its surroundings caused the fire. In contrast to the smoke damage caused by the fire is the damage resulting from the compost, both before and after the fire. In the latter case, the evidence presented at trial clearly established the acts of appellants which caused the nuisance. No comparable showing was made regarding the fire.
Appellants further urge that since appellees failed to connect the alleged harmful bacteria with any damage sustained, the testimony as to the bacteria should not have been admitted and was so prejudicial as to warrant reversal. Appellees, on the other hand, argue that the testimony of the experts presented by both sides agreed that there was a potential contamination of appellees' well water by the compost, and that this potential for contamination was a proper question for the *30 jury to consider. However, testimony consisting of guesses, conjectures or speculation (suppositions without a premise of fact) is clearly inadmissible. (Drackett Products Co. v. Blue, Sup.Ct.Fla. 1963, 152 So.2d 463) The evidence of the alleged harmful bacteria involved in the instant case was of a speculative nature, served no useful purpose, and was prejudicial to appellants' position. In the absence of proof of a causal connection between the compost, the bacteria and some claimed damage such was not a proper issue for jury consideration.
As to appellees' point relating to the failure of the trial court to tax Dr. Gilcreas' expert witness fee as costs, we find that the trial court acted correctly. In taxing costs, a trial court has wide discretion. (Conboy v. City of Naples, Fla.App.2d 1970, 230 So.2d 476, cert. den. 400 U.S. 825, 91 S.Ct. 48, 27 L.Ed.2d 53 (1970)) Under the circumstances of the instant case, the trial court did not abuse that discretion.
Reversed and remanded for a new trial.
MILLS, J., and SACK, MARTIN, Associate Judge, concur.
NOTES
[1] During oral argument, appellants argued that the jury should not have considered testimony from an expert real estate appraiser who calculated damages for loss of rental value during a 24 month period for the Sanders and for the Tookes since the evidence showed that after the dumping began in January of 1971, the Tookes left their property for only two days until they sold the property in April of 1973, in contrast to the Sanders who left their property soon after the compost caught on fire and never returned. Inasmuch as appellants have not assigned reception of such evidence concerning loss of rental value as error, we are unable to consider that point on appeal.