421 So.2d 170 (1982)
Rudolph J. MUCKENFUSS, Property Appraiser of Marion County, and Thomas Olson, Tax Collector of Marion County, Appellants,
v.
P. Randy MILLER, Executive Director, Florida Department of Revenue, and the Deltona Corporation, Appellees.
Nos. 81-670, 81-672, 81-673 and 81-674.
District Court of Appeal of Florida, Fifth District.
September 29, 1982.
Rehearing Denied November 5, 1982.
*171 C. Ray Greene, Jr., of Greene & Greene, P.A., Jacksonville, for appellant.
Jim Smith, Atty. Gen., and Jeffrey P. Kielbasa, Asst. Atty. Gen., Tallahassee, for appellee, Dept. of Revenue.
L. Ralph Smith, Jr., of Dearing & Smith, Tallahassee, for appellee, The Deltona Corp.
SHARP, Judge.
The property appraiser of Marion County, and other state and county officials[1] appeal from a final judgment entered after a nonjury trial. The lower court upheld Deltona's attack on the ad valorem tax assessments made on its property, known as Marion Oaks, for the four consecutive tax years commencing in 1976, and ending in 1979. These cases were consolidated for trial and for purposes of appeal.
In a lengthy, well-reasoned opinion, the trial court concluded that the county's tax assessments for Marion Oaks were excessive and that Deltona's appraisers at trial were basically correct. We concur in most of the lower court's opinion accompanying the final judgments. We point out, however, that our opinion in no way limits or controls the tax appraiser's valuation or tax appraisals in other tax years, or on other projects. See Dade County v. Richter's Jewelry Company, Incorporated, 223 So.2d 375 (Fla. 3d DCA 1969); see generally Withers v. Metropolitan Dade County, 290 So.2d 573 (Fla. 3d DCA 1974).
The lower court determined Deltona owed an amount of tax, for each of the four *172 years, greater than the sums it had admitted were due and had paid into the registry of the court, pursuant to section 194.171, Florida Statutes (1981). The court ruled that Deltona was entitled to an early payment discount on the tax sums paid into the court at the commencement of the suits, and it added interest at the rate of 8% per annum on the deficiencies. It also awarded $165,715.67 in costs to Deltona. Appellants challenge the court's rejection of their method of valuation for Marion Oaks; they claim the court erred in not assessing interest on the deficiencies at 10% per annum, pursuant to section 194.192(2), Florida Statutes (1981); they question the allowance of discounts on the tax sums paid; and they argue the award of costs was arbitrary and excessive. Finding no error, we affirm, except as hereafter indicated.
The parties agreed that only the tax years 1976 and 1977 would be tried, because the issues were the same for the following two years. They also entered into the following stipulation:
[The] procedures employed by ... [the] property appraiser of Marion County, Florida, in reaching his just value conclusion for January 1, 1976 and January 1, 1977, did not conform to the requirements of Florida law. Therefore his determination of just value as of January 1, 1976 and January 1, 1977 is not entitled to any presumption of validity as would otherwise be accorded a property appraiser's determination of value.
Therefore, in this case, the challenging taxpayer did not have to overcome the presumption of validity that is normally given by courts to the tax assessor's valuation and assessment.[2]
The tax appraiser in this case employed a value realization model, called the Dorchester/Kinnard model, to appraise the Marion Oaks properties. That project consists of over 14,000 platted acres which Deltona is developing over a period of years. By 1977 only 8% of the property had been improved with streets, utilities, and other required facilities necessary prior to building. By 1977 Deltona had sold, by unrecorded contracts for deed, more than 9,000 lots. The appellants' appraiser determined just valuation for the project by relying on the income Deltona would receive from the contracts for deed, and an estimation of sales income for the balance of the lots projected into the distant future (to the year 2000 A.D.).[3]
The size of the project and its modest physical development but significant sales activity created an appraisal dilemma recognized by the expert witnesses for both sides. The taxpayers' appraiser, Mr. Charles Rex, used the more traditional cost approach method, and double checked his results by an income method appraisal which involved projecting sales, subtracting development costs, and discounting the cash flow. Rex testified the income method was too speculative to use for this project because there were too many variable factors such as interest rates and development costs, to be projected over too long a time period. Rex's appraisal was based primarily on an estimate of the costs that Deltona had incurred for the total project each year. He said this was also the approach an experienced developer would most likely use in arriving at an estimate of the price he would be willing to pay for the balance of the project owned by Deltona.
*173 The trial court rejected the appellants' appraisal because it found that their appraisal method failed to take into consideration all the factors set forth in section 193.011, Florida Statutes (1981).[4] Subsections 193.011(1), (5) and (6) require consideration of the present cash value of the land, the cost and value of improvements on it, and its actual condition. The tax assessor's appraiser admitted that pursuant to his model, unimproved, unsold lots were given the same value as improved unsold lots. The court said:
Expert witnesses employed by the property appraiser clearly did not, in fact and in good faith, consider several of the statutory criteria, including cost of the property, present replacement value of any improvements, or condition of the property. [Cites omitted]. Most importantly, the defendants' experts did not attempt to determine `the present cash value of the property,' as defined by § 193.011(1), Fla. Stat. (1976), as being `the amount a willing purchaser would pay a willing seller ... in cash or the immediate equivalent thereof ... for the property.'
The appellants argue in their brief that their method of appraisal encompassed consideration of costs of future development. However, they failed to cite to pages in the lengthy record for testimony supporting their arguments, and appellee cited testimony which supports the trial court's findings. The trial court's findings and conclusions come to us with a presumption of correctness, and we see no reason to overturn them. Atlantic Internal Investment Corporation v. Turner, 383 So.2d 919 (Fla. 5th DCA 1980). Failure to consider one or more of the factors set forth in section 193.011 is sufficient to invalidate an appraisal done by a tax assessor even when it is entitled to the presumption of correctness.[5]
The trial court also rejected the tax assessor's appraisal method because it included a present value for future improvements Deltona was obligated to make to the properties under the agreements for deed. It said:
Under their premise, land value substantially increased when Deltona promised to deliver improvements in the future. That the land had not actually been improved was of no consequence.
An appraisal which ignores the actual present condition and use of the land cannot pass just valuation muster;[6] and to the extent it seeks to include a value for other *174 reasons, here promised future development, it cannot stand as "just valuation."[7] We also think the lower court correctly rejected appellants' appraisal because the method used was too speculative. It necessarily required projections of costs, interest, and other elements over too long a time period.[8]
The trial court found that Deltona acted in good faith in challenging the tax assessments, and in estimating the amount of the tax due and calculating the deposit required by section 194.171, even though Deltona's estimate was less than the amount of the tax later found due by the court, after trial of the case. Appellants have failed to point to any basis in the record to show error in the trial court's findings, and no basis upon which to suggest we impose a finding of bad faith, thereby justifying an imposition of the 10% interest penalty provided under section 194.192(2), Florida Statutes (1981).[9]
Further, we think the trial court correctly allowed the early payment discounts[10] for the tax deposits paid when the suits were filed, and it properly credited them before calculating the interest due to the tax authorities on the deficiencies.[11] However, in making these calculations the trial court inadvertently figured the discount allowable on the gross amount of taxes it found due. The taxpayer is only entitled to a discount based on the sums it paid into the registry of the court at the commencement of each suit: 4% of $208,144.52 for 1976 or $8,325.78; 3% of $216,823.52 for 1977 or 6,504.71; 4% of $233,625.60 for 1978 or $9,345.02; and 4% of $235,227.62 for 1979 or $9,409.10. Because these calculations will change the amounts of the final judgments, we remand these proceedings for amendment of the judgments.
Finally, we affirm the trial court's award of costs to the taxpayers pursuant to section 194.192, Florida Statutes (1981).[12] Appellants argue that Deltona's expert witness fee charge of $138,058.08 is so large it is excessive on its face. However, there is no record of any inappropriate expenditure, nor does the record show that excessive hours of work were billed or that an excessive hourly charge was imposed. We have no alternative in this case but to affirm the costs award. Cf. County of St. Lucie v. Browning, 358 So.2d 253 (Fla. 4th DCA 1979) (where there was a record of fees charged by other experts which could be compared with the challenged expert fee); see generally Durrance v. Sanders, 329 So.2d 26 (Fla. 1st DCA 1976) (a trial court has wide discretion in taxing costs).
The final judgments and orders supplementing them are affirmed except as herein indicated, and these proceedings are remanded for correction of the final judgment amounts consistent with this opinion.
AFFIRMED IN PART AND REMANDED.
ORFINGER, C.J., and FRANK D. UPCHURCH, J., concur.
NOTES
[1] These appellants are necessary defendants in Deltona's suit pursuant to section 194.181, Florida Statutes (1981).
[2] See Straughn v. Tuck, 354 So.2d 368 (Fla. 1977); St. Joe Paper Co. v. Brown, 223 So.2d 311 (Fla. 1969); Exchange Realty Corp. v. Hillsborough County, 272 So.2d 534 (Fla. 2d DCA 1972); Calder Race Course, Inc. v. Overstreet, 363 So.2d 631 (Fla. 3d DCA 1978).
[3] The Department of Revenue had not issued guidelines pursuant to sections 195.032 and 195.062(1), Florida Statutes (1981), on how property sold pursuant to an agreement for deed should be valued, although it had unadopted one that advised the use of an appraisal method similar to the one employed by the taxpayer. Since the guidelines were not formally issued pursuant to Chapter 120, they did not create a presumption of correctness which the property appraiser would have to overcome pursuant to section 195.032, Florida Statutes (1981). See Powell v. Kelly, 223 So.2d 305 (Fla. 1969); cf. St. Joe Paper Co. v. Conrad, 333 So.2d 527 (Fla. 1st DCA 1976); Container Corp. of Am. v. Rutherford, 293 So.2d 379 (Fla. 1st DCA 1973).
[4] This section lists eight factors which appraisers must consider in arriving at "just valuation" of property for tax purposes:

(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable local or state land use regulation and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium prohibits or restricts the development or improvement of property as otherwise authorized by applicable law;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income for said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements. When the net proceeds of the sale of any property are utilized, directly or indirectly, in the determination of just valuation of a realty of the sold parcel or any other parcel under the provisions of this section, the property appraiser, for the purposes of such determination, shall exclude any portion of such net proceeds attributable to payments for household furnishings or other items of personal property.
[5] Straughn, 354 So.2d 368; Exchange Realty Corp., 272 So.2d 534.
[6] See Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973); Lanier v. Walt Disney World Co., 316 So.2d 59 (Fla. 4th DCA 1975).
[7] Cf. Boynton v. Canal Auth., 265 So.2d 722 (Fla. 1st DCA 1972).
[8] Town of Bay Harbor Island v. Lancelot Associates, 243 So.2d 437 (Fla. 3d DCA 1971).
[9] City of Miami Beach v. Wilton, Ltd., 305 So.2d 83 (Fla. 3d DCA 1974).
[10] § 197.012, Fla. Stat. (1981).
[11] Wilton, 305 So.2d 83; Tampa Coca-Cola Bottling Co. v. Walden, 230 So.2d 52 (Fla. 2d DCA 1969).
[12] Pursuant to Florida Rule of Appellate Procedure 9.110(h), we can review the cost award although the notice of appeal did not reference this order, because appellee has apparently not been prejudiced. See, e.g., Hollimon v. State, 232 So.2d 394 (Fla. 1970).