466 So.2d 245 (1984)
Laverine THURSBY and Wynell Thursby, Appellants,
v.
REYNOLDS METALS COMPANY, a Delaware Corporation, and Liberty Mutual Insurance Company, a Corporation, Appellees.
Nos. AQ-315, AR-429.
District Court of Appeal of Florida, First District.
December 13, 1984.
As Amended on Denial of Rehearing March 6, 1985.
Rehearing Denied April 9, 1985.
*246 Dana G. Bradford, II, and Lawrence J. Hamilton, II, of Gallagher, Baumer, Mikals & Bradford, Jacksonville, for appellants.
Herbert R. Kanning, P.A., and Jack W. Shaw, Jr., P.A., of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for appellees.

AS REVISED ON DENIAL OF REHEARING
SMITH, Judge.
Appellants appeal from a final judgment after a jury verdict in favor of appellees in this products liability action, as well as a final judgment taxing costs. Appellants sought recovery from the appellees[1] based on theories of negligence, breach of express and implied warranty, and strict liability, alleging that appellee Reynolds Metal Company ("Reynolds") negligently designed and manufactured a machine used *247 by appellant Laverine Thursby's employer, Metal Container Corporation, in the manufacture of aluminum cans. Appellants rely upon a series of alleged trial errors for reversal. Finding no error requiring reversal, we affirm the judgment below.
At the time of the accident, which occurred January 5, 1977, appellant Laverine Thursby was employed by the Metal Container Corporation ("Metal Container") of Jacksonville, Florida. Metal Container had contracted with Apache Container Corporation ("Apache") for Apache's purchase and subsequent modification of appellee Reynolds' Mark III Draw and Iron Press, which as modified was to be installed on Metal Container's aluminum can production assembly line.[2] Reynolds was to build the press in conformity with the specifications of Apache; Apache was then to install its own computer control system as part of the system used to operate Metal Container's whole automated production line.
The function performed by the press was to stretch a piece of aluminum into a can by use of a piston. Occasionally, the press would fail to form a perfect can, causing the malformed piece of aluminum to become caught in the press, and requiring its removal before the machine could resume operation. Appellant's job was to clear this aluminum from the press so that the next can could be made. This portion of the press was guarded by a door which had to be removed to accomplish this operation. Inside the guard door was a limit switch which would activate when the door was opened, disengaging the piston's flywheel and applying a brake. Once this occurred, the jammed aluminum could then be cleared safely.
As the machine was designed, opening the guard door would not result in turning off the electric current to the press. Thus, the proper procedure for clearing aluminum from the press required the operator to (1) hit an emergency stop switch, which would turn off all power to the press, (2) hit an oil switch which would prevent oil from spitting out of the press, and (3) open the tool guard door, which would activate the limit switch. On the date of his accident, Thursby attempted to clear an aluminum piece from the machine by hitting the oil switch and activating the limit switch, but not the emergency stop. Appellant's fingers were injured when the piston stroked while his fingers were still inside the press.
At trial, two theories were offered as to what caused the piston to stroke, causing appellant's injuries. Testimony by two expert witnesses for appellant indicated that the accident was caused by failure of the limit switch inside the guard door. These experts suggested a number of alleged deficiencies in Reynolds' design of the press as facilitating the occurrence of limit switch failure.[3] Appellee Reynolds presented testimony suggesting that "electronic noise" from the work environment had been detected by the press's computer, whose "modified logic circuit" reacted to the noise by instructing the press's piston to stroke, notwithstanding its other safety devices.
As one point on appeal, appellants contend that the trial court committed reversible error by excluding evidence showing a post-accident design change made on the press by an employee of Metal Container. Appellants proffered evidence to show that subsequent to the accident, the employee examined the press's limit switch and decided to replace the limit switch with a "proximity switch," which, the employee felt, would function more reliably. Appellants urge that this evidence should have been admitted, citing this court's decision in Hartman v. Opelika Machine and Welding Co., 414 So.2d 1105 (Fla. 1st DCA 1982), pet. for rev. den., 426 So.2d 27 (Fla. 1983). In Hartman, this court found that where subsequent remedial measures were *248 taken by a third party who was not a party to the litigation, the policy underlying the rule of exclusion now embodied in Section 90.407, Florida Statutes, was not offended.[4] The Hartman court found that the rule is based on the notion "that owners would be discouraged from attempting repairs that might prevent future injury if they feared that evidence of such acts could be introduced against them," quoting Denolf v. Frank L. Jursik Co., 395 Mich. 661, 238 N.W.2d 1, 4 (1976), and that the policy reasons underlying the rule of exclusion are absent where the subsequent remedial measures are taken by someone not a party to the action. 414 So.2d at 1110.
Hartman is factually distinguishable from the case at bar. In Hartman, the defendant sought introduction of the evidence of subsequent remedial measures, a change in design, in an attempt to focus blame for the accident on the third party, who was not a party to the lawsuit, rather than itself. In such circumstances, the policies advanced by Section 90.407 are not implicated because the evidence does not tend to prove "negligence or culpable conduct" on the part of the defendant before the court. In finding no reversible error on this point, the Hartman court simply determined that it would "prefer the rule of admissibility under the limited circumstances applicable to this case... ." Id. at 1110.
Here, on the other hand, the evidence of post-accident changes proffered by appellants was clearly designed to show "negligence or culpable conduct" on the part of Reynolds in the design or manufacture of the press. Thus, the evidence was offered for a purpose for which its use is prohibited under Section 90.407, which on its face applies, irrespective of the status of the party actually undertaking the remedial measures. Under the circumstances, we would be hard put to find reversible error in the trial court's adherence to the Florida Evidence Code.
Our approval in Hartman of the Denolf court's analysis concerning the absence of policy reasons for exclusion, where the repairs or changes are made by a third party, did not convert the rule of exclusion into one of admissibility in derogation of the clear language of the statute, where (unlike Hartman,) the evidence has no other independent basis for admissibility. In Hartman, the evidence was admissible to show that the sole proximate cause of the accident was a design defect for which a non-party was solely responsible. Thus, application of the holding in Hartman does not compel a holding that the evidence excluded here was relevant and admissible. As pointed out by the Denolf court, in order to be admissible, the evidence must also be relevant (238 N.W.2d at 5), a requirement which the court found was met in that case primarily because of the issue of alternate design feasibility. Id. at page 4, footnote 4. See, Tulkku v. Mackworth Rees, Etc., 76 Mich. App. 472, 257 N.W.2d 128, (1977), reversed on other grounds, 406 Mich. 615, 281 N.W.2d 291 (1979), interpreting Denolf.[5] Assuming, without deciding, that Florida's statute may be construed as allowing for an exception as to evidence of post-accident remedial measures where there is an issue of alternate design feasibility, appellant has failed to demonstrate error under this exception because it is not shown that there was a genuine issue made in the trial court concerning the feasibility of using different switches or switch locations.[6] We find no *249 basis in Hartman or other authority presented by appellant for the proposition that evidence of post-accident changes by Metal Container's employee of the kind proffered here, neither directed nor accepted by Reynolds, can be attributed to Reynolds as an admission of pre-accident culpability, nor that such evidence is admissible to show that the switch furnished by Reynolds was defective. We note that the Michigan Court of Appeals in Tulkku, supra, on very similar facts, stated that the mere fact that switches were changed "does not tend to show that the replacements utilized different or better safety features," 257 N.W.2d at 130. Further, as similarly observed in Tulkku (Id. at 130, 131), exclusion of evidence of the change in switches did not prevent plaintiff from presenting evidence comparing the Reynolds' switch with other products available. Cf. Przeradski v. Rexnord, Inc., 119 Mich. App. 500, 326 N.W.2d 541 (1982), remanded on other grounds, 417 Mich. 1100, 338 N.W.2d 188 (1983), (evidence that third person installed guard over winch-head of cement mixer after accident inadmissible, citing Denolf, and Rule 407, Michigan Rules of Evidence  subsequent remedial measures inadmissible to prove negligence in connection with the incident). Accordingly, we find the trial court did not err in refusing admission of the subsequent remedial measures taken by the Metal Container employee.
Appellants challenge a number of aspects of the jury instructions given or denied below. Upon review, we find no reversible error has been demonstrated. First, it is contended that the trial court erred in refusing appellants' proposed instruction on express warranty. Although appellants urge the existence of language constituting express warranties in several documents allegedly passing between Reynolds and Apache during the negotiations between them, we think the issue finally boils down to statements relating to the "safety" of the machine and its components. Citing Section 672.313, Florida Statutes (1983), appellants assert that the record below is replete with evidence constituting sufficient affirmations of fact relating to the press's "state of the art" quality and its "fail-safe" operating characteristics, and that such "affirmations" constitute express warranties of reliability on Reynolds' part. We find this and appellants' further arguments concerning express warranty unavailing.
Litigants are, of course, entitled to have instructions reflecting their theory of the case submitted to the jury where evidence exists in the record to support the theory, Wilson v. Florida Airlines, Inc., 449 So.2d 881 (Fla. 2d DCA 1984); Morganstine v. Rosomoff, 407 So.2d 941, 943 (Fla. 3d DCA 1981). Furthermore, in cases such as this, involving the alleged breach of an express warranty, the failure to give the proper requested instructions has been held reversible error, McKnelly v. Sperry Corp., 642 F.2d 1101 (8th Cir.1981); Young & Cooper, Inc. v. Vestring, 241 Kan. 311, 521 P.2d 281 (1974). However, our review of the evidence relied upon by appellants below fails to convince us that the trial court's denial of the requested instruction on the express warranty theory constituted reversible error.
Express warranties in Florida are governed by Section 672.313, Florida Statutes (1981), which provides in pertinent part:
(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express *250 warranty that the goods shall conform to the affirmation or promise ...
(2) ... an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.
While a wide variety of statements made by sellers have been found to be "affirmations of fact," see generally Annotation, 94 A.L.R.3d 729 (1979), an express warranty is generally considered to arise only where the seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction, Royal Typewriter Co. v. Zerographic Supplies, 719 F.2d 1092, 1100 (11th Cir.1983), quoting Royal Business Machines, Inc. v. Lorraine Corp., 633 F.2d 34, 41 (7th Cir.1980), and on which the buyer justifiably relies as part of the "basis of the bargain," Escambia Chemical Corp. v. Industrial-Marine Supply Co., 223 So.2d 773, 775 (Fla. 1st DCA 1969); Keating v. DeArment, 193 So.2d 694 (Fla. 2d DCA 1967), cert. den., 201 So.2d 230 (Fla. 1967), overruled in part on other grounds in Brown v. Hall, 221 So.2d 454, 457 (Fla. 2d DCA 1969). These requirements are the general rule in those jurisdictions which, like Florida, have adopted Section 2-313 of the Uniform Commercial Code, see Overstreet v. Norden Laboratories, Inc., 669 F.2d 1286, 1290-1 (6th Cir.1982) (construing Kentucky law); Fletcher v. Coffee County Farmers Cooperative, 618 S.W.2d 490 (Tenn. Ct. App. 1981); Hauter v. Zogarts, 16 UCC Rep. 938, 947, n. 13 (Cal. 1975) (collecting cases); but cf. Murray, Basis of the Bargain: Transcending Classical Concepts, 66 Minn.L.Rev. 283 (Jan. 1982) (reliance not required under UCC 2-313); Campus Sweater & Sportswear Co. v. M.B. Kahn Construction Co., 515 F. Supp. 64 (D.S.C.), aff'd without opinion, 644 F.2d 877 (4th Cir.1979) (same, construing model UCC). On the other hand, under subsection (2) of Section 672.313, Florida Statutes, a seller's statement will be construed as a "mere opinion or commendation" creating no express warranty where, among other things, the buyer and seller have equal knowledge of the facts and hence are in an equal position to express an opinion regarding the product. Carter Hawley Hale Stores, Inc. v. Conley, 372 So.2d 965, 969 (Fla. 3d DCA 1979).
Here, appellants show no reliance by Apache on any affirmations of particular facts on the part of Reynolds regarding the Mark III press's safety features. On the contrary, Edward Maeder, President of Apache during the time period in question, testified that the Mark III press was held in such high regard in the industry that Apache began its negotiations with Reynolds already certain of its decision. Moreover, Apache eventually purchased the press even though the negotiations concerning the performance specifications of the press sought by Apache had broken down. Indeed, Apache, according to Mr. Maeder, purchased the Mark III press "under duress," and at a price significantly higher than comparable equipment available from other companies.[7] The fact is that Apache purchased the press notwithstanding Reynolds' refusal to make any specific factual guarantee regarding the press's performance. Mr. Maeder testified that Apache was relying on Reynolds' reputation for quality in the industry. The trial judge, who had before him all the evidence, found no basis for an instruction on express warranty. This ruling comes to the court with a presumption of correctness, and appellants have failed to demonstrate that this ruling was erroneous under the circumstances. See Weiss v. Rockwell Manufacturing Co., 9 Ill. App.3d 906, 293 N.E.2d 375, 381 (1973) (operator of woodworking machine sued manufacturer when he was injured during machine's use; court held a statement by the seller-manufacturer that, if operated properly, there was no danger of being injured by the machine *251 was an opinion; the fact affirmed was not one of which buyer was unaware); Olin Mathieson Chemical Corp. v. Moushon, 93 Ill. App.2d 280, 235 N.E.2d 263 (1968) (seller's statements that explosives were of "good quality," would produce "good results," and customer would be pleased with their use constituted opinions); Chase Resorts, Inc. v. Johns-Manville Corp., 476 F. Supp. 633, 638-639, 27 UCC Rep. 1287 (E.D.Mo. 1979) (in sale of automatic sprinkler system for golf course, seller's statement that system "would provide years of trouble-free service" opinion, not express warranty); Axion Corp. v. G.D.C. Leasing Corp., 359 Mass. 474, 269 N.E.2d 664, 668-669 (1971) (letter describing machine as "with few exceptions... [a] turnkey operation" held statement of opinion); cf. Easton Farmers Elevator Co. v. Chromalloy American Corp., 310 Minn. 568, 246 N.W.2d 705 (1976) (seller's statements regarding a corn dryer's capacity, expressed in bushels-per-hour or bushels-per-gallon, creates an express warranty; only the seller could be aware of these facts); McCarty v. E.J. Korvette, Inc., 28 Md. App. 421, 347 A.2d 253, 258 (Ct.Sp.App. 1975) (tire guaranty against all raod hazards an express warranty; is an affirmation of fact regarding the tire's existing qualities and capabilities); Jackson v. Muhlenberg Hospital, 96 N.J. Super. 314, 232 A.2d 879 (Law.Div. 1967), rev'd on other grounds, 53 N.J. 138, 249 A.2d 65 (1969) (hospital's assertion that it would use "utmost care" in selecting blood donors to avoid contamination an affirmation of fact on seller's future performance or actions; hence, is an express warranty).
Secondly, appellants suggest error in the trial court's instruction as to a manufacturer's duty to warn. The court rejected appellants' proposed instruction on the subject  correctly we think. Appellants' proposed instruction erroneously assumes that the element of failure to warn is an issue in every strict liability action. The Restatement of Torts (Second), Section 402A, states that a product may be deemed defective if it is unreasonably dangerous and placed in the hands of a consumer without warning. This does not say that to prevent a product from being deemed unreasonably dangerous a warning must always be given. Thus, appellant's proposed instruction misstates the law; such an instruction must be refused. J.A. Cantor Associates, Inc. v. Brenner, 363 So.2d 204 (Fla. 3d DCA 1978). The instruction actually given correctly informed the jury that there is a duty to warn when the hazards associated with the use of the product are not obvious, reasonably apparent, or not as well known to the user as to the manufacturer. Further, the instruction properly left to the jury the question of whether the hazard complained of here was "reasonably apparent" or "as well known to the user as to the manufacturer."
We further find without merit appellants' contention that the trial court erred in refusing their proposed instruction that in a products liability action, changes made by a purchaser to a product subsequent to purchase will not excuse the manufacturer from negligence in the design of the product, so long as the modifications were not substantial and were foreseeable by the manufacturer. An examination of the charge as a whole, Knabb v. Tompkins, 254 So.2d 858 (Fla. 1st DCA 1971), reveals that appellants' alternative instruction would have been cumulative. Reversible error cannot be predicated upon a rejected proposed instruction fairly covered in the instructions given. McLain v. Daps Discount Auto Parts Store, Inc., 354 So.2d 1230, 1233 (Fla. 1st DCA 1978).
Turning next to appellants' contentions regarding the trial court's refusal to instruct the jury that a non-designing manufacturer may be liable for design defects if the defects are sufficiently obvious to alert a reasonably competent manufacturer of the danger, we find no basis for such an instruction in the evidence. Appellants' litigational stance was based on the theory that Reynolds was the designer in toto of the press, and that Apache merely adopted Reynolds' design as to all aspects of the press, including its computer control system. *252 Accordingly, to charge the jury as appellants sought would have been "reasonably calculated to confuse or mislead the jury," and thus improper. Reeder v. Edward M. Chadbourne, Inc., 338 So.2d 271, 275 (Fla. 1st DCA 1976).
Appellants also contend that the following charge given on comparative negligence constituted an argumentative comment on the evidence:
If you find from the evidence that the plaintiff declined to follow the instructions of [appellee] Reynolds Metal Company, and failed to operate the product in accordance with directions and instructions of the manufacturer, and that such conduct contributed to the injuries complained of, you may consider such evidence, along with all the other evidence in the case, in determining any negligence of the plaintiff.
We cannot agree. The mere fact that a trial court instructs the jury on the possibility of the existence of comparative negligence on a plaintiff's part, and the factors the jury must consider in deciding whether such fault on a plaintiff's part exists, does not constitute an argumentative emphasis on one theory of the case. Blue v. Drackett Products Co., 143 So.2d 897 (Fla. 3d DCA 1962); cf. Floyd v. Sellars, 145 So.2d 880 (Fla. 3d DCA 1962). An examination of the charge as a whole shows no undue prominence was given to appellant's alleged negligence as compared to other aspects of the case.
Appellants next urge this court to find error in the trial court's exclusion of evidence concerning a subsequent similar accident on the same type of press manufactured by Reynolds. This subsequent accident occurred more than two years after appellant's accident, at a Reynolds plant in San Francisco. In order to be admissible, a subsequent accident must be substantially similar to the accident at issue in litigation. Railway Express Agency, Inc. v. Fulmer, 227 So.2d 870, 873 (Fla. 1969). The two accidents here were not shown to exhibit essential similarities: there was no evidence indicating that the same limit switches were located in the same place on the presses; nor did the evidence show that the control switches were the same in both presses. Since appellants' primary contention in this cause was that the accident was caused by the defective limit switch, appellants' failure to establish similarity in switches and switch locales warranted the trial judge's exclusion of this evidence.
Finally, appellants challenge the trial court's order taxing expert witness charges against both appellants. Appellants incorrectly argue that there was no record to justify the costs. On the contrary, appellee without objection presented evidence as to the number of hours each witness testified in court. The trial court then used these hours, along with the witnesses' fees, to determine the costs. Appellants conceded at the hearing that the time spent for preparation of actual testimony is taxable as costs, but nevertheless argue that the appellee presented no evidence to prove each witness's preparation time. We conclude that while here there was no specific evidence presented as to the actual hours each witness expended to prepare for his testimony, it was reasonable for the trial court, with knowledge of the length and the type of testimony given by each witness, to determine these expert witness fees where the amounts involved were not of such magnitude as to indicate grossly excessive charges. Section 92.231(2), Florida Statutes (1983); Conboy v. City of Naples, 230 So.2d 476 (Fla. 2d DCA 1970), cert. den., 400 U.S. 825, 91 S.Ct. 48, 27 L.Ed.2d 53 (1970). Appellant has shown no abuse of the trial court's broad discretion to tax costs. Muckenfuss v. Miller, 421 So.2d 170, 174 (Fla. 5th DCA 1982); Durrance v. Sanders, 329 So.2d 26, 30 (Fla. 1st DCA 1976). Accordingly, the judgment appealed from is AFFIRMED.
WENTWORTH and JOANOS, JJ., concur.
NOTES
[1] Appellee Liberty Mutual Insurance Company was appellee Reynolds' liability insurance carrier.
[2] Both Apache and Metal Container are subsidiaries of Anheuser-Busch.
[3] Each of appellant's experts admitted, however, that their theory of causation was viable only if certain specific portions of Thursby's testimony were disbelieved.
[4] Section 90.407, Subsequent remedial measures: "Evidence of measures taken after an event, which measure if taken before it occurred would have made the event less likely to occur, is not admissible to prove negligence or culpable conduct in connection with the event."
[5] We note that Michigan, in 1978, adopted Michigan Rules of Evidence, including Rule 407, "Subsequent Remedial Measures" (identical to Rule 407, Federal Rules of Evidence), which provides exceptions to the rule of exclusion "when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." The Committee Note states that MRE 407 is consistent with prior Michigan law.
[6] At least one Florida appellate court has adopted the "feasibility" exception. American Motors Corp. v. Ellis, 403 So.2d 459, 465-6 (Fla. 5th DCA 1981), pet. for rev. den., 415 So.2d 1359 (Fla. 1982). The exception was also recognized, but found inapplicable for lack of an issue of feasibility in Voynar v. Butler Manufacturing Company, 463 So.2d 409 (Fla. 4th DCA 1985). However, as indicated, Reynolds never contested the feasibility of alternate modes of design and manufacture vis-a-vis the limit switch. Absent an actual controversy, admission for this purpose is barred. Grenada Steel Industries, Inc. v. Alabama Oxygen Co., Inc., 695 F.2d 883, 888 (5th Cir.1983), reh. den. en banc, 699 F.2d 1163 (1983).
[7] Reynolds, according to Mr. Maeder's testimony, was unwilling to be "tied down with actual numbers" clearly delineating the maximum performance capabilities of the Mark III press. Instead, Reynolds characterized the press as "... a good commercial machine that performs" and asserted to Apache that "you're in no position to come and tell us how we should do it."