761 So.2d 426 (2000)
DOUG CONNOR, INC., etc., Appellant,
v.
PROTO-GRIND, INC., et al., Appellees.
No. 5D99-942.
District Court of Appeal of Florida, Fifth District.
May 26, 2000.
Rehearing Denied June 23, 2000.
Vincent G. Torpy, Jr., of Frese, Nash & Torpy, P.A., Melbourne, for Appellant.
Jerry H. Trachtman of Trachtman and Henderson, P.A., Melbourne, for Appellee.
PETERSON, J.
Doug Connor, Inc. ("Connor"), appeals the directed verdict entered against it on a multi-count complaint in which it sought revocation of acceptance of goods after purchasing a grinding machine, and damages for fraud and breaches of implied and express warranties. We affirm the directed verdict as to all counts except Count III for breach of an express warranty.
Connor is in the land clearing business. In 1997, Doug Connor ("Doug"), the president of Connor, Inc., became interested in acquiring a large commercial grinding machine called a Proto-Grind 1200 manufactured by Proto-Grind, Inc. ("Proto-Grind"). Proto-Grind's brochure describes the machine as the toughest grinder on the market and capable of grinding *427 "trouble free" a wide variety of debris. The brochure specifically lists timber, stumps, and railroad ties as items capable of being reduced to mulch and contains pictures of a large log being processed by the grinder. The brochure does not describe any type of timber or stumps as being incapable of being reduced to mulch.
Doug attended a demonstration of the machine in Atlanta, Georgia, during which a large log was reduced to mulch. During the demonstration, Doug told George Protos, the president of Proto Grind, that he would need "a machine that would handle my land clearing operation ... in Melbourne, Florida.... I told him that I needed it to grind, be able to grind palmettos, palm trees, oak trees, pine trees, pepper trees, whatever type of land clearing that's out there, that's what I needed the machine to do." Doug testified that he explained to Protos that he mainly conducted large land clearing in his business, approximately 15 acres to up to 100 acres, and that Protos assured him that "the machine would do what I needed it to do, large jobs, small jobs, whatever I needed."
In April 1997, Connor contracted to purchase a Proto-Grind 1200 for $226,000. Upon delivery, Connor employed it in a land clearing job which consisted of pepper and oak trees, but not palm trees or palmettos. The contract for the purchase of the grinder provided for a two-week trial period in which Connor could use the machine and, only if satisfied with its performance during the trial run, would he be irrevocably committed to purchasing the grinder. However, Doug could not resist the incentive offered by Protos only three days after the delivery that eliminated Connor's first installment payment of $5,500 in exchange for the elimination of the trial period.
Unfortunately, the grinder proved not to be as tough as advertised or represented. Connor experienced repeated mechanical difficulty but the most serious problem was the inability of the machine to discharge the mulch from cabbage palm trees and palmettos.
Connor's mechanic talked to representatives of Proto-Grind about the problem and was advised that some new grates, "demo grates," would perform better with not only the cabbage palms but other land clearing debris. The mechanic ordered the demo grates. The new grates "worked a little better as far as the land clearing debris, with the exception of cabbage palms." The mechanic testified that when grinding cabbage palms the mulch would simply not pass through the grates. During this period, from April to June, Connor wrote several letters to Protos complaining about the deficiencies.
In July 1997, Connor filed its complaint and alleged in Count III, that Proto-Grind breached an express oral warranty that the machine purchased would grind organic materials effectively, including palmettos, and that the machine "would be free from defects for a period of six months upon delivery and that should service be necessary, that defendant would promptly come to Florida to fix the machine at plaintiff's location."
The matter proceeded to a jury trial, but the trial court granted Proto-Grind's motion for directed verdict at the conclusion of Connor's case-in-chief. On the count involving the express warranty the trial court found that, it, like each of the implied warranties, was waived by Connor when it cut short its trial run in exchange for the incentive of having his first installment payment paid by Proto-Grind.
We conclude otherwise based on our interpretation of the applicable statutes.
Section 672.315 (1997) provides as follows:
Implied warranty; fitness for a particular purposeWhere the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there *428 is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.
The next section provides in relevant part:
672.316 (1997) Exclusion or modification of warranties.
* * *
(3) Notwithstanding subsection (2):
* * *
(b) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he or she desired or has refused to examine the goods, there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him or her
. . .
(Emphasis added). By its language, subsection 672.316(3)(b) applies only to implied warranties and not to express warranties. Only the implied warranties are potentially waived when a buyer makes or is given an opportunity to complete a pre-purchase inspection of the goods.
Connor alleged in Count III, that "at the time of sale ... as an inducement to cause plaintiff to purchase the Proto-Grind 1200, defendant ... through its agents, expressly, orally warranted to plaintiff that the Proto-Grind 1200 would grind, in an efficient and effective manner, organic waste materials from Florida land clearing operations, including the grinding and disposition of palmettos." At trial, Doug testified that the agents of Proto-Grind "all assured me all day long that the machine would do what I needed it to do here in Florida." Doug, during his meeting with Protos, informed Protos that he typically cleared large tracts of landanywhere from 15 to 100 acres. Doug also told him that he needed to grind palmettos, palm trees, oak trees, pine trees and pepper trees. Doug's mechanic testified that during his inspection of a Proto-Grind machine in Tampa, company officials "had assured us that the machine would grind cabbages, because they had already done it."
Proto-Grind argues that the oral affirmations made by the Proto-Grind agents merely constituted puffing, sales talk, or otherwise non-actionable opinion and that in order to satisfy the threshold of an affirmation of fact, the statement must be detailed and specific. See Miles v. Kavanaugh, 350 So.2d 1090 (Fla. 3d DCA 1977). In Miles, the court found that a seller of an airplane, by reference to his logbook, had warranted the accuracy of the information contained in the book. Proto-Grind states that the principle of that case is that the threshold of making a factual affirmation is that the statement be specific and detailed. Contrarily, Miles seems to support the opposite conclusion by providing a broad definition of an express warranty. The court wrote:
[A]n express warranty need not be by words, but can be by conduct as well, such as, the showing of a blueprint or other description of the goods sold to the buyer. Moreover, fraud is not an essential ingredient.... It is sufficient that the warranty was made which formed part of the basis of the bargain.
Id. at 1093. We believe that the statements made by Proto-Grind could amount to more than puffing or sales talk. Proto-Grind specifically understood the buyer's needs and represented to Connor that the Proto-Grind 1200 would meet those needs. The trier of fact should have had the opportunity to consider whether Proto-Grind made the express warranty that the Proto-Grind 1200 could, without modification of its basic components, reduce palmettos and palm trees to mulch on a regular basis. Connor's evidence that an unmodified Proto-Grind 1200 would only mulch palm trees 50% of the time without jamming, presented a jury question as to whether Proto-Grind's pre-purchase representations regarding mulching palm trees and palmetto brush were met.
*429 Proto-Grind further argues that an express warranty generally arises only where the seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction, and on which the buyer reasonably relies on as part of the basis of the bargain. See Thursby v. Reynolds Metals Co., 466 So.2d 245, 250 (Fla. 1st DCA 1984), rev. denied, 476 So.2d 676 (Fla.1985). It is not clear from the record, however, that when Connor purchased the Proto-Grind 1200 he was aware that it was ill-equipped to mulch palm trees and palmetto brush.
On a similar note, Proto-Grind argues that because Doug knew that a competitor was, at times, quite dissatisfied with his Proto-Grind 1200, Connor was on equal footing with Proto-Grind with respect to knowledge of the machine's capability. Doug testified that the Proto-Grind was the first grinder that Connor ever purchased. Even if Doug was more savvy than he acknowledged, the manufacturer of an expensive product should be well aware of the product's attributes and deficiencies before it offers it to the public. We conclude that the relative knowledge of the parties is a matter for the jury to consider, not a complete bar to recovery by Connor.
We conclude that the trial court erred in dismissing Connor's count alleging a breach of an express warranty. Express warranties are not excluded by subsection 672.316(3)(b). Moreover, the finder of fact could reasonably conclude that the alleged oral promises made were more than mere puffing, that the product failed to meet the promise that it would sufficiently grind palm trees and palmettos, that Connor relied on these affirmations, and that because the deficiency of the product was not cured, Proto-Grind breached this express warranty.
The directed verdict in favor of Proto-Grind on Count III is vacated and the matter is remanded to the trial court for further proceedings.
AFFIRMED IN PART; DIRECTED VERDICT VACATED IN PART; REMANDED.
W. SHARP and GRIFFIN, JJ., concur.