982 So.2d 721 (2008)
Doug BELDEN, as Hillsborough County Tax Collector, Appellant,
v.
TAMPA WESTSHORE ASSOCIATES LIMITED PARTNERSHIP, a foreign limited partnership, Appellee.
Nos. 2D07-3217 to 2D07-3219.
District Court of Appeal of Florida, Second District.
April 18, 2008.
Rehearing Denied June 2, 2008.
Brian T. FitzGerald, Senior Assistant County Attorney, Tampa, for Appellant.
Robert E.V. Kelley, Jr., and Marie A. Borland of Hill, Ward & Henderson, P.A., Tampa, for Appellee.
CANADY, Judge.
In this case we consider the proper method for calculating the refund due for the overpayment of real estate taxes. Doug Belden, as Hillsborough County Tax Collector, appeals orders of the circuit court determining that refunds due to Tampa Westshore Associates Limited Partnership (TWA) were improperly calculated *722 by Belden. For the reasons we explain, we conclude that the tax collector's calculation of the refund amounts was proper and that the circuit court erred in ruling that the refunds made by the tax collector were insufficient.

I. Background

TWA, the owner of the International Plaza Shopping Center in Tampa and the lessee of the real property on which the shopping center is located, disputed the assessed values and the resulting ad valorem taxes for the shopping center property for the years 2002, 2003, 2004, and 2005. Prior to filing suit to challenge the assessments and taxes for each of those years, TWA elected to pay the full amount of taxes due in November of each year rather than some lesser amount equivalent to the tax which TWA admitted in good faith to be owing. See § 194.171(3), Fla. Stat. (2002-2005). The full amount of taxes due in November is based on a discount for early payment at the rate of 4 percent. See § 197.162, Fla. Stat. (2002-2005).
Ultimately, TWA and the Hillsborough County Property Appraiser reached a settlement concerning the disputed assessments, lowering the assessment for each of the years in question. Stipulated judgments consequently were entered directing the property appraiser to issue "certificate[s] of correction to reflect the [revised] assessments" and directing the tax collector to issue revised tax bills and appropriate refunds.
The tax collector calculated the refund due for each year by determining the amount of TWA's revised tax liability with the 4 percent November discount applied and subtracting that amount from the amount of taxes actually paid by TWA for the particular year. For the year 2002, for example, the property assessment was reduced from $166,546,372 to $153,975,119. The gross taxthat is, the amount due in Marchbased on the revised assessed value was $3,895,448.29. Reducing the revised gross tax by 4 percent for the November discount ($3,895,448.29 LESS $155,817.93) yields a revised November tax liability of $3,739,630.36. TWA had actually paid the sum of $4,042,167.13, which constituted full payment based on the original assessed value and with the November discount applied. Subtracting the revised November tax liability from the tax payment actually made by TWA ($4,042,167.13 LESS $3,739,630.36) yields the refund amount of $302,536.77 for 2002, which was paid by the tax collector.
Being dissatisfied with the refunds made by the tax collector, TWA filed motions to enforce settlement. TWA contended that the tax collector's method for calculating the refunds was flawed because it "eliminates any credit to [TWA] for paying early for each of the years in question." TWA also argued that the tax collector's method of calculating the refunds should be rejected because it was inconsistent with the method utilized in Tampa Coca-Cola Bottling Co. v. Walden, 230 So.2d 52 (Fla. 2d DCA 1969), and Muckenfuss v. Miller, 421 So.2d 170 (Fla. 5th DCA 1982), for determining the amount of property tax deficiencies. Based on these cases, TWA argued and the trial court agreed that the refunds due to TWA should be determined by subtracting the amount of the revised gross tax due from the amount of the original gross tax due.
Under the method advocated by TWA and adopted by the trial court, the refund amount for 2002, for example, is increased by $12,605.70, the refund being $315,142.47 rather than the $302,536.77 calculated by the tax collector. The refund amount of $315,142.47 ordered by the trial court is the difference between $4,210,590.76 (the original gross tax amount) and $3,895,448.29 (the revised gross tax *723 amount). According to TWA, utilization of this method is necessary to give TWA full credit for having satisfied the liability associated with the original tax assessment.
The tax collector argues on appealas he did before the trial courtthat the cases relied on by TWA are factually distinguishable and that use of the calculation methodology advocated by TWA would result in TWA's paying an amount of taxes for each year in question that is less than the November discounted amount based on the revised assessments.

II. Analysis

At first blush, the refund calculation method adopted by the trial court seems plausible. But upon closer examination, the trial court's method does not withstand scrutiny. The flaw in the method is manifest once we consider that the method leads to the net payment by TWA of taxes for each year in an amount less than the November discounted amount based on the revised assessments.
In 2002, for example, the net taxes paid by TWA under the trial court's refund calculation would be $3,727,024.66the difference between the amount originally paid by TWA ($4,042,167.13) and the refund ordered by the trial court ($315,142.47). The November discounted amount for the 2002 taxes based on the revised assessment is $3,739,630.36, which exceeds the net taxes to be paid under the trial court's calculation by $12,605.70. TWA has provided no satisfactory explanation for why it should ultimately pay taxes in an amount that is less than the amount of the revised November tax liability.
Contrary to TWA's contention, the tax collector's method of calculation does give TWA full credit for having paid taxes in November of each year. The tax collector calculated TWA's revised tax liability for each year based on the revised assessment and with the 4 percent November discount applied. Under the tax collector's refund calculations, the net amount of taxes paid by TWA for each year will equal the amount payable in November to fully satisfy TWA's revised tax liability. Aside from interest on its overpaymentsto which TWA is not entitled[1]the tax collector's refund calculations put TWA in the same position it would have been in had the assessments originally been made at the correcti.e., revisedamount and the resulting tax liability had been satisfied in November.
TWA's reliance on Tampa Coca-Cola and Muckenfuss is unwarranted. Those cases involved disputes regarding underpayments of taxes. The methodology used in those cases to determine the amount of the deficiency, including interest, owed by the taxpayer is not applicable to the determination of the amount of a refund due to a taxpayer on an overpayment.

III. Conclusion

The trial court erred in adopting a refund calculation method that would result in an underpayment of taxes by TWA. We therefore reverse the orders on appeal and remand for the entry of orders denying the relief sought by TWA.
Reversed and remanded.
CASANUEVA and DAVIS, JJ., Concur.
NOTES
[1] TWA concedes that although taxpayers are required to pay interest on tax underpayments, see § 194.192(2), taxpayers who make overpayments are not entitled to recover interest.