**SANITARY LINEN SERVICE CO.,**
Plaintiff-Appellee-Cross Appellant.

v.

**ALEXANDER PROUDFOOT COM-
PANY, Defendant-Appellant-
Cross Appellee.**

No. 28687.

United States Court of Appeals,
Fifth Circuit.

Nov. 19, 1970.

Rehearing Denied and Rehearing En
Banc Denied Jan. 6, 1971.

Michael Nachwalter, Kelly, Black, Black & Kenny, P. A., by Hugo L. Black, Jr., Miami, Fla., for appellant.

Daniel Neal Heller, Miami, Fla., for appellee.

Before TUTTLE, BELL, and GOLD-BERG, Circuit Judges.

BELL, Circuit Judge:

This appeal involves a diversity suit having a contractual basis. The district court ruled for the plaintiff on a failure of consideration and restitution theory although not specifically so denominated. We affirm on the appeal of defendant. The district court denied plaintiff additional damages and a cross-appeal was taken on this ruling. We also affirm on the cross-appeal.

Defendant Proudfoot is an Illinois corporation which devises and installs systems to increase plant efficiency through what is sometimes known in the

business world as short interval scheduling. Plaintiff Sanitary operates a commercial laundry service in Miami, Orlando, and Pensacola, Florida. After a two week analysis of Sanitary's operations, a contract was entered into between the parties on March 12, 1964. During a three or four hour meeting between representatives of each, written letter proposal was discussed as well as two other documents entitled "What We Find" and "What We Propose." Following this discussion, Sanitary accepted Proudfoot's proposal and work was to commence on the following day.

The district court made specific findings with reference to the terms of the contract. These are sustained by the record. Proudfoot was to supply a "worthwhile installation of schedule and method improvements designed to provide greater control over utilization of man and machine hours and to effect operating economies." The purpose of the schedule or system, according to Proudfoot's negotiator, was to ferret out and recover lost time in all phases of production, delivery and office work in Sanitary's operations. The benefit would accrue to Sanitary in the form of reduced manpower thus resulting in payroll savings. Sanitary was to use the full influence of management to insure complete cooperation from all employees during the installation of the program. It was also to pay for the service at the rate of $800.00 per man week for 94 man weeks.

Proudfoot immediately commenced work in Sanitary's Miami plant with a three man team. They began gathering all the necessary data to devise their schedule and to institute their program. Basically the idea was to develop reasonable expectancies for the various machines and crews when working under a continuous flow of materials. Then the schedule would be designed to insure that the flow was steady. The result would be the elimination of speed-ups and slow-downs in the work flow thus allowing fewer workers to turn out the finished product.

The gathering of the data and development of the schedule fell behind and Sanitary's management became restless to see some results. Proudfoot's man in charge of the project reassured Sanitary that savings were just around the corner and that they were going to recommend very shortly that 26 persons be eliminated in the ironing department of the Miami plant. On June 5, 1964 this installation was actually accomplished and the people discharged. Proudfoot's former employees who were on the job at the time admitted at the trial that at the time they had not really worked out a schedule and that without it, the layoff would not achieve the desired result. Shortly after the layoff the plant had to operate at longer hours to get out the necessary production. Employee complaints followed. With the approval of Proudfoot's employees, the 26 persons were rehired. Similar difficulty occurred at the Orlando plant. In sum, as the district court found, former employees of Proudfoot, witnesses for Sanitary at the trial, testified that they were unable to develop an over-all schedule plan that would develop a continuous flow and eliminate lost time.

In July the installation manager was discharged by Proudfoot and new personnel placed on the job in an effort to develop a workable program or installation. Further studies were made and plans and forms drawn up, but no further "installations" were attempted. On October 9, 1964, after having collected $74,200, and spent the contemplated time on the Sanitary job, Proudfoot discontinued its efforts. Several contracts were made after this in an effort to have Proudfoot perform. The parties, however, broke off negotiations and this suit followed.

Originally Sanitary was suing on a theory of breach of express or implied warranty in that the savings promised by Proudfoot did not occur. The district judge found that there was no express promise to effect savings and that there is no implied warranty in a contract for services. He did find, albeit in

a rather unspecified way, that Sanitary did not receive what they bargained for, i. e., workable system. He then awarded damages to Sanitary in the nature of restitution. According to the court, they paid for a service which they did not get and thus were entitled to have their money back.

■ Proudfoot argues that the system failed because Sanitary did not cooperate with them in making the employees follow the plan. The record belies this argument. Sanitary fired two plant managers because Proudfoot said that they were not cooperating. They hired scheduling clerks at Proudfoot's request. Management was available for consultation when any signs of non-cooperation on the part of the workers appeared. The findings of the district court to the effect that there was no failure to cooperate on the part of Sanitary are amply supported.

■ In the final analysis, the question presented is whether a scheduling installation was devised for Sanitary and made operative. After a careful study of the record we conclude, as did the district court, that no scheduling installation as contemplated in the agreement was ever devised or furnished to Sanitary. Thus, as Proudfoot did not produce what they contracted to do, there was a failure of consideration.

The law in Florida on the subject of failure of consideration where services are to be performed was recently stated in Binz v. Helvetia Florida Enterprises, Inc., Fla.App., 1963, 156 So.2d 703, 704:

> "It is axiomatic that where a promise to pay a sum of money is made upon the consideration of a promise to perform certain service, the consideration fails if the services are not performed, and the promise based thereon is discharged."

See also Jones v. McCallum, 1885, 21 Fla. 392.

In *Binz,* there was no attempt to render the services bargained for; however, we can detect no difference in that situation and one where the attempt to perform is unsuccessful and the promisee is without fault in the undertaking. Cf. Restatements of Contracts, § 274.

Proudfoot contends that in any event it did provide a workable system since it proved that some savings occurred. This argument stands or falls as the district court found on whether or not Sanitary purchased guaranteed savings. Proudfoot has maintained throughout that what it was selling was services and not results. The district court found that there were some slight benefits from Proudfoot's activities. We conclude that these savings or benefits were not of any consequence in determining whether the service of developing and installing a system was accomplished as promised. They did not rise to the level of preventing the failure of consideration from being material.

■ The cross-appeal of Sanitary based on the theory of recovering promised savings in the amount of $1,000,000 is without merit.

The judgment of the district court is affirmed.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.