**DONE AND ORDERED** in Tampa, Florida on November 5, 2015.

**Lori BYRNES and Matthew
Byrnes, Plaintiffs,**

v.

**John SMALL, Musculoskeletal Institute
Chartered, Medtronic, Inc. and Med-
tronic Sofamor Danek USA, Inc., De-
fendants.**

**Case No: 8:14–cv–1726–T–36MAP**

United States District Court,
M.D. Florida,
Tampa Division.

Signed November 9, 2015

Jeffrey Lee Gordon, Maney & Gordon, PA, Tampa, FL, for Plaintiffs.

Stephen Hamilton Sears, Ashley R. Kellgren, MacFarlane, Ferguson & McMullen, PA, David J. Walz, Edward W. Gerecke, Carlton Fields Jorden Burt, PA, Tampa, FL, Andrew E. Tauber, Mayer Brown, LLP, Washington, DC, Daniel L. Ring, Mayer Brown, LLP, Chicago, IL, Murray S. Levin, Sean P. Fahey, Pepper Hamilton, LLP, Philadelphia, PA, for Defendants.

### ORDER

Charlene Edwards Honeywell, United States District Judge

This cause comes before the Court upon the Motion to Dismiss First Amended Complaint filed by Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. (collectively, "Medtronic") (Doc. 79). Plaintiffs Lori Byrnes and Matthew Byrnes (collectively, "Plaintiffs") responded in opposition to the Motion (Doc. 84), and Medtronic replied in further support of its Motion (Doc. 87). Medtronic filed two notices of supplemental authority (Docs. 88 and 93), and Plaintiffs also filed a notice of supplemental authority (Doc. 89). The Court, having considered the parties' submissions and being fully advised in the premises, will now GRANT–IN–PART and DENY–IN–PART Medtronic's Motion.

## I. BACKGROUND

### A. Procedural History

This action arises over the injuries allegedly caused to Lori Byrnes by the bone graft device Infuse, which was implanted in Ms. Byrnes in an off-label manner during a spinal fusion surgery. Plaintiffs' original complaint alleged that Medtronic's actions (and inactions) in promoting the off-label use of Infuse subjected it to liability for fraud, failure to warn, design defect, misrepresentation, negligence, breach of express warranty, and loss of consortium. *See* Doc. 2. Medtronic moved to dismiss the complaint, and the Court granted the motion. *See Byrnes v. Small,* 60 F.Supp.3d 1289 (M.D.Fla.2015) (*"Byrnes I "*). In so doing, the Court held that any cause of action was expressly and impliedly preempted to the extent it was premised on any failure to warn theory, and that the design defect claim was expressly preempted. *See id.* at 1297–99. The Court also held that to the extent any cause of action was premised on alleged affirmative misrepresentations or warranties made by Medtronic, it was not expressly or impliedly preempted, but that to the extent any claims were not preempted, Plaintiffs had failed to plead them suffi-

ciently. *See id.* at 1302.[1] The Court therefore dismissed the Complaint and granted Plaintiffs leave to amend.

Plaintiffs subsequently filed an amended complaint. Doc. 75 ("Am.Compl."). Medtronic now moves to dismiss the First Amended Complaint with prejudice.

### B. Statement of Facts[2]

The allegations describing the Infuse product, Medtronic's off-label promotion of Infuse, and the circumstances of Ms. Byrnes' surgery remain the same as already set forth in detail by this Court in *Byrnes I,* 60 F.Supp.3d at 1292–94, and are incorporated by reference herein. The First Amended Complaint, however, asserts only four claims—for "Misrepresentation, Fraudulent Misrepresentation and Fraud in the Inducement (First Cause of Action); "Negligence of Misleading Off-label Advertising and Promotion" (Second Cause of Action); "Breach of Express Warranty" (Third Cause of Action); and "Loss of Consortium" (Fourth Cause of Action). The First Amended Complaint also contains additional allegations regarding the express warranties and fraudulent statements made by Medtronic, as will be discussed in detail below.

### II. LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### III. DISCUSSION

#### A. Fraud (First Cause of Action)

To state a claim for fraud, a plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem,* 44 So.3d 102, 105 (Fla.2010) (quotation marks, citation, and emphasis omitted). "[A] party must state with particularity the circumstances constituting fraud . . . ." Fed.R.Civ.P. 9(b). The purpose of this requirement is to alert the defendant

---

1. The loss of consortium claim brought by Mr. Byrnes was dismissed because it is a derivative claim and all of Ms. Byrnes' claims were due to be dismissed. *See id.* at 1301.

2. The following statement of facts is derived from the First Amended Complaint (Doc. 75),

the allegations of which the Court must accept as true in ruling on a motion to dismiss. *See Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir.1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,* 711 F.2d 989, 994 (11th Cir.1983).

to the "precise misconduct with which [it] [is] charged" and to protect the defendant "against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370–71 (11th Cir.1997) (quotation marks and citations omitted). This requirement is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations ..., and (2) the time and place of each such statement and the person responsible for making ... same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001) (quotation marks and citation omitted). Nevertheless, the particularity requirement must not be applied to abrogate the concept of notice pleading, and "alternative means are also available to satisfy the rule." *Durham v. Business Management Associates*, 847 F.2d 1505, 1511–12 (11th Cir.1988); *see also Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir.1985) ("a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading").

In *Byrnes I*, the Court dismissed Plaintiffs' fraud claim without prejudice because "Plaintiffs [had] failed to plead fraud with the requisite particularity.... Indeed, Plaintiffs only allege[d] in a vague and conclusory manner that Medtronic 'fraudulently concealed and misrepresented' the dangers of the off-label use of Infuse, Compl. ¶¶ 265–67, but fail[ed] to identify with particularity any misrepresentations and/or concealments that were actually relied upon by Dr. Small, [the doctor who performed the surgery at issue on Ms. Byrnes,] or how those misrepresentations and/or concealments proximately caused Ms. Byrnes' injuries." 60 F.Supp.3d at 1298.

In the First Amended Complaint, Plaintiffs now allege that Medtronic made the following false statements to Dr. Small:

- In September 2000, through its agents Drs. SD Boden, TA Zdeblick, HS Sandu, and SE Heim, that the bone graft substitute in Infuse, recombinant human bone morphogenetic protein type 2 ("BMP") "is and was safe to use in an off-label manner and applied at multiple disc levels, and from a posterior approach, and would not otherwise cause ectopic bone growth," Am. Compl. ¶ 267(a);

- In 2002, through its agents Drs. SD Boden, J Kang, HS Sandu, and JG Heller, that clinical pilot trials demonstrated that BMP "is and was safe to use in posterolateral lumbar spine fusion applied at multiple disc levels, and would not otherwise cause ectopic bone growth," *id.* ¶ 267(b);

- In 2002, through its agents JK Burkus, MF Gornet, CA Dickman, and TA Zdeblick, that using BMP with tapered interbody cages was safe when "applied at multiple disc levels, and would not otherwise cause ectopic bone growth," *id.* ¶ 267(c);

- In 2002, through its agents JK Burkus, EE Transfeldt, and SH Kitchel, that clinical and radiographic outcomes using BMP with tapered interbody cages at multiple disc levels "demonstrated no significant findings and did not otherwise cause ectopic bone growth," *id.* ¶ 267(d);

- In 2003, through its agents DS Baskin, P Ryan, and V Sonntag, that " '[a] prospective, randomized, controlled cervical fusion study using recombinant human bone morphogenetic protein–2 with the CONERSTONE–SR allograft ring and the ATLANTIS anterior cervical plate' demonstrated no significant findings and did not otherwise cause ectopic bone growth," id. ¶ 267(e);

- In 2003, through its agents JK Burkus, SE Heim, MF Gornet, and TA Zdeblick, that " '[a]n integrated analysis of clinical trials using the LT–CAGE lumbar tapered fusion device demonstrated no significant findings and did not otherwise cause ectopic bone growth,' " and that BMP was "superior to the autograft bone," id. ¶ 267(f);

- In 2003, through its agent Dr. J Kenneth Burkust, that a radiographic assessment of interbody fusion using BMP demonstrated its efficacy for fusion and that it "would not otherwise cause any increased risk of ectopic bone growth or any complication," id. ¶ 267(n);

- In 2004, through its agents RW Haid, CL Branch, JT Alexander, and JK Burkus, that " '[p]osterior lumbar interbody fusion using recombinant human bone morphogenetic protein type 2 with cylindrical interbody cages' was safe to use in an off-lable manner and applied at multiple disc levels, and from a posterior approach, and would not otherwise cause ectopic bone growth," id. ¶ 267(g);

- In 2005, through its agents JK Burkus, HS Sandhu, MF Bornet, and MC Longley, that "clinical and radiographic outcomes when using [BMP] in Combination with Structural Cortical allografts surgery in lumbar spinal fusion was safe and would not otherwise cause ectopic bone growth," id. ¶ 267(h);

- In 2005, through its agents M Boakye, PV Mummaneni, and M Garrett, that "anterior cervical discectomy and fusion involving a polyetheretherketone spacer (PEEK) and [BMP] was safe and although the cage was open, the BMP would not leak or migrate to cause ectopic bone growth," id. ¶ 267(i);

- In 2006, through its agents JR Dimar, SD Glassman, JK Burkus, and LY Carreon, that "clinical outcomes proved fusion success at 2 years of instrumented posterolateral fusions with [BMP]/compression resistant matrix and would not otherwise cause ectopic bone growth or any complication and was thus superior to utilizing iliac crest bone graft," id. ¶ 267(j).[3]

Plaintiffs allege also that Medtronic intended for Dr. Small to rely on these misrepresentations and concealments, and that Dr. Small did in fact rely on these misrepresentations and concealments by relaying this information to Ms. Byrnes and recommending that she undergo the application of Infuse BMP during multilevel, posterior approach, spinal fusion surgery. Id. ¶¶ 270–71. Plaintiffs allege, finally, that Medtronic's misrepresentations

---

**3.** Medtronic also allegedly made certain additional false statements to Dr. Small after 2006, see e.g., Am. Compl. ¶¶ 267(k), (l), (m), but the Court does not include these allega-

tions because, as will be discussed below, they were made after Ms. Byrnes underwent the surgery at issue in October 2006, id. ¶ 248.

and concealments proximately caused Ms. Byrnes' injuries by causing her to consent to the application of Infuse BMP during her multi-level, posterior approach, spinal fusion surgery. *Id.* ¶ 272.

Medtronic argues that Plaintiffs' fraud claim should again be dismissed because first, to the extent it is based on any alleged omissions or concealments, it is expressly preempted by 21 U.S.C. § 360k(a) and *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008), and second, to the extent it is not preempted, it has not been adequately pleaded.

■ The Court agrees with Medtronic's first argument. Although not entirely clear, the First Cause of Action appears to be based in part on Medtronic's alleged concealment of information from Dr. Small. *See, e.g.*, Am. Compl. ¶ 268 ("The MEDTRONIC Defendants knew, or should have known, that they were *concealing* ... true information about the known comparative risks and benefits of the use of Infuse ....") (emphasis added). As discussed in *Byrnes I*, however, Plaintiffs have not identified any federal requirement to inform the public or to update warning labels regarding the dangers of the off-label use of medical devices. *See* 60 F.Supp.3d at 1297. Therefore, to the extent this claim is premised on Medtronic's alleged concealment of information from Dr. Small, it is expressly preempted, because requiring Medtronic to warn Dr. Small of the dangers of the off-label use of Infuse "would clearly be different from, or in addition to, the federal requirements." *Id.*[4]

As a general matter, however, the Court disagrees with Medtronic's second argu-

ment. Medtronic argues that Plaintiffs' allegations are insufficient to state a claim for fraud because: (1) the allegations do not specify the form the alleged misrepresentations took nor where they were made; (2) Plaintiffs do not allege that Dr. Small ever read any of the articles implicitly referenced in the allegations; (3) Plaintiffs have not identified specifically which statements were made in the articles; (4) Plaintiffs do not explain why any of the alleged misrepresentations were actually false; (5) Plaintiffs have not alleged reasonable reliance; and (6) Plaintiffs have not sufficiently alleged agency. None of these reasons, for the most part, are persuasive.

■ *First,* the allegations regarding Medtronic's misrepresentations are sufficiently specific and particularized to put Medtronic on fair notice of the claim against it and alert it of the precise misconduct with which it is being charged. Plaintiffs have alleged the identities of the representors; the dates the misrepresentations were made, and the specific misrepresentations that were made. Although Plaintiffs have failed to allege specifically what form (whether oral or written) the misrepresentations took or where the misrepresentations were made, Medtronic's Motion makes clear that the allegations are specific enough for it to identify that the alleged misrepresentations appeared in certain published scientific articles. *See, e.g.*, Doc. 79 at 9 and n.10. It would have been better for Plaintiffs to include these specific details, but such additional allegations are not absolutely necessary where Medtronic is reasonably able to deduce, based upon the specificity of the other facts alleged, precisely how and where the alleged misrepresentations were made.

4. The Court therefore need not (and does not) address whether Plaintiffs have otherwise adequately stated a claim for fraud by omission. *See* Doc. 79 at 18–19.

*Second,* it is unclear why Medtronic believes that Plaintiffs need to specifically allege that Dr. Small read the articles implicitly referenced in Paragraph 267. Plaintiffs have alleged that Medtronic's agents "advised plaintiff's surgeon, Dr. Small," of each of the misrepresentations. Am. Compl. ¶ 267. This is sufficient to establish that Medtronic made each of the alleged misrepresentations to Dr. Small. *Jones v. Medtronic,* 89 F.Supp.3d 1035 (D.Ariz.2015), upon which Medtronic attempts to rely, is distinguishable on the facts. *Compare Jones,* 89 F.Supp.3d at 1049 (holding that the plaintiff failed to allege fraud with the requisite particularity because the plaintiff alleged only that certain of Medtronic's articles persuaded some unspecified and unidentified "patients and doctors" to use Infuse in an off-label manner).

*Third,* Plaintiffs have identified with sufficient precision what false statements were made. To begin with, as Medtronic concedes, at least some of the alleged misrepresentations are direct quotes from the articles. *See* Doc. 79 at 11 n.11. It is hard to imagine how Plaintiffs' allegations could be more precise. Further, although it appears that many of the alleged misrepresentations are paraphrased in Plaintiffs' own words, there is no requirement that Plaintiffs allege each misrepresentation word-for-word. Rather, as is apparent, the allegations describe the content of the misrepresentations with enough precision to alert Medtronic as to its particular misconduct. *See, e.g.,* Am. Compl. ¶ 267(a) (alleging that Medtronic's agents advised Dr. Small "that BMP is and was safe to use in an off-label manner and applied at multiple disc levels, and from a posterior approach,

and would not otherwise cause ectopic bone growth"); compare *Hawkins v. Medtronic, Inc.,* Case No. 13–cv–499, 2014 WL 346622, at *12 (E.D.Cal. Jan. 30, 2014) (finding the plaintiff's fraud claim to be insufficiently pleaded because "nothing in the complaint points to specific content in those articles or statements made by the named opinion leaders that were allegedly false").

■ *Fourth,* assuming arguendo that Plaintiffs were required to explain why each of the alleged representations was false, Plaintiffs have done so here. Paragraph 268 alleges that Medtronic "possessed actual notice that BMP caused uncontrolled ectopic bone growth that was likely to cause nerve root compression and encroachment within the spinal canal and within the neuroforamen, most notably in the posterior vertebral foramen." Moreover, although Plaintiffs do not specifically address why each clause of each particular representation was false, when the representations are read in conjunction with the allegation that Medtronic "wrongfully and inaccurately claimed that the dangers inherent to off-label use of Infuse did not exist" and "misrepresented information about the known comparative risks and benefits of the use of Infuse," Am. Compl. ¶ 267, it can reasonably be inferred that each of these representations was false because the opposite was in fact true.

■ *Fifth,* Plaintiffs were not required to plead reasonable reliance. As the Florida Supreme Court made clear, "[j]ustifiable reliance is not a necessary element of fraudulent misrepresentation." *Butler,* 44 So.3d at 105.[5] To the extent Medtronic suggests that Plaintiffs have not

---

5. In arguing that reasonable reliance is a required element for fraud under Florida law,

Medtronic does not attempt to distinguish or even reference *Butler,* and cites only outdated,

even adequately alleged *reliance* on any of the alleged misrepresentations, its argument is without merit. As discussed above, Plaintiffs have alleged with sufficient particularity the misrepresentations Medtronic made to Dr. Small. Plaintiffs have also alleged that "Dr. Small relied upon this misinformation and these misrepresentations by relaying this information to Plaintiff BYRNES and by recommending that Plaintiff BYRNES undergo application of InFuse BMP during multilevel, posterior approach, spinal fusion surgery." Am. Compl. ¶ 271. Such an allegation is not, as Medtronic contends, merely "conclusory"—the fact that Dr. Small allegedly relayed the misinformation to Plaintiffs and recommended that Ms. Byrnes undergo the surgery supports the fact that Dr. Small did in fact rely upon Medtronic's alleged misrepresentations. The Court agrees, however, that Dr. Small could not have relied upon the misrepresentations alleged in Paragraphs 267(k), (*l*), and (m), because they were made after Ms. Byrnes' 2006 surgery, and will therefore dismiss this Cause of Action to the extent it is premised on any of those alleged misrepresentations.

■ *Finally,* Plaintiffs have adequately alleged an agency relationship between Medtronic and the authors of the alleged misrepresentations. To begin with, Plaintiffs allege in detail Medtronic's relationship with, and payments to, a number of the authors, including Drs. Zdeblick, Boden, Dimar, Glassman, Haid, and Burkus, and characterizes these authors as Medtronic's "opinion leaders." See Am. Compl. ¶¶ 198, 201, 203, 207–08. Further, although Plaintiffs do not specifically address Medtronic's relationship with some of the authors, they allege that Medtronic paid and directed various "opinion leaders" to issue false statements regarding the safety of the off-label use of Infuse. *See id.* ¶¶ 136–37, 172–76. While these allegations are not the model of precision, they provide at least "some of the tell-tale signs of a principal-agent relationship, such as the ability of the principal to hire, fire, or supervise," *Ocana v. Ford Motor Co.,* 992 So.2d 319, 326 (Fla.3d DCA 2008), and allow the Court to reasonably infer that Medtronic acknowledged the authors of the alleged misrepresentations as its agents; that the authors accepted the undertaking; and that Medtronic had control over the authors' statements.

In sum, the Court concludes that the allegations supporting Plaintiffs' fraud claim as amended fairly apprise Medtronic of the fraud it allegedly perpetrated, and of the precise misconduct with which it is being charged. Moreover, although it might have been better for Plaintiffs to set forth certain of their allegations in greater detail and/or with greater precision, applying a more relaxed pleading requirement is warranted in light of the fact that "the alleged fraud occurred over an extended period of time and the acts are numerous," *Anthony Distributors, Inc. v. Miller Brewing Co.,* 904 F.Supp. 1363, 1366 (M.D.Fla. 1995).

For the reasons stated above, the Court will grant in part and deny in part Med-

non-binding caselaw for this proposition. A reasonable inquiry would have revealed the correct standard under Florida law as unequivocally set forth by the Florida Supreme Court. Accordingly, the Court reminds Medtronic's counsel that, as officers of the court, they have duties of candor and good faith in presenting legal arguments to the Court. *See also* Fed.R.Civ.P. 11 (by presenting to the court a written motion, an attorney certifies that "[the] legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law").

tronic's Motion to Dismiss as it relates to the First Cause of Action.

## B. Negligence (Second Cause of Action)

 To state a claim for negligent misrepresentation, a plaintiff must allege that "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation." *Baggett v. Electricians Local 915 Credit Union,* 620 So.2d 784, 786 (Fla.2d DCA 1993).

In *Byrnes I,* the Court dismissed Plaintiffs' negligence claim because it was preempted as pleaded. Specifically, of the four theories upon which Plaintiffs' negligence claim was premised, two were essentially failure-to-warn theories and were therefore expressly preempted; one was premised only on Medtronic's alleged failure to comply with federal law and was therefore impliedly preempted; and one was premised only on the fact that "Medtronic engaged in off-label promotion" and was impliedly preempted because "Plaintiffs [did] not identif[y] any state law duty to refrain from truthful off-label promotion and [did] not allege[ ] any affirmative misrepresentations." 60 F.Supp.3d at 1300.

In the First Amended Complaint, Plaintiffs' negligence claim is premised on four theories very similar to those in the original Complaint: (1) Medtronic's misleading promotion and marketing of Infuse for off-label use as safe and effective with no increased risk of complication; (2) Medtronic's failure to warn physicians and patients of the dangers associated with the off-label use of Infuse; (3) Medtronic's failure to comply with federal law and regulations; and (4) Medtronic's failure to exercise reasonable care to prevent Infuse from creating an unreasonable risk of harm to Ms. Byrnes and other consumers. Am. Compl. ¶ 287.

Medtronic argues that this claim should be dismissed with prejudice because it is preempted or otherwise insufficiently pleaded. The Court agrees. To begin with, grounds 2, 3, and 4 are preempted for the same reasons discussed in *Byrnes I,* 60 F.Supp.3d at 1300. Specifically, grounds 2 and 4 are still essentially failure-to-warn theories and are therefore expressly preempted. *See id.* Plaintiffs' addition of the phrase "[m]isleading advertising, promotion, and marketing of Infuse" in front of the phrase "by failing to warn," Am. Compl. ¶ 287(b), does not somehow transform a preempted failure-to-warn theory into a non-preempted theory based on *affirmative misrepresentations.* Likewise, ground 3 is impliedly preempted because Plaintiffs still have not identified a state law duty to comply with the federal laws and regulations. *See* 60 F.Supp.3d at 1300.[6]

 Finally, although ground 1 as amended is now a theory that is not preempted, it has not been alleged with sufficient particularity. Rule 9(b)'s heightened pleading requirements apply to negligent misrepresentation claims. *See Lamm v. State Street Bank and Trust,* 749

---

**6.** Egregiously, as to this theory, the allegation in the First Amended Complaint is *identical* to the allegation in the original Complaint that

the Court found insufficient in *Byrnes I.* Compare Doc. 2 · ¶ 329(c) *with* Am. Compl. ¶ 287(c).

F.3d 938, 951 (11th Cir.2014). However, Plaintiffs allege only that Medtronic engaged in some unspecified "[m]isleading advertising, promotion, and marketing of Infuse ... for off-label use with an LT-Cage in lumbar spine fusion, surgeries as safe and effective with no increased risk of complication." Am. Compl. ¶ 287(a). Plaintiffs do not identify the specific misleading advertising, promotion, or marketing in which Medtronic engaged, or any details surrounding the alleged misleading advertising, promotion, or marketing, such as who made those statements or when they were made.[7]

In sum, because all of Plaintiffs' theories of negligence are preempted or inadequately pleaded, this claim must be dismissed. Further, because Plaintiffs have already been afforded an opportunity to amend this claim, but have reasserted essentially the same theories that were already dismissed by this Court in *Byrnes I* and again failed to allege Medtronic's affirmative misrepresentations, the Court will dismiss this claim with prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir.2001) (a district court need not grant leave to amend "where there has been ... repeated failure to cure deficiencies by amendments previously allowed").

## C. Breach of Express Warranty (Third Cause of Action)

In *Byrnes I*, the Court held that Plaintiffs' breach of express warranty claim was not preempted, but nevertheless dismissed Plaintiffs' claim because "Plaintiffs [had] failed to allege specifically what affirmations of fact were made by Medtronic to Dr. Small, or how those express warranties proximately caused Ms. Byrnes' injury." 60 F.Supp.3d at 1301. In the First Amended Complaint, Plaintiffs allege that Medtronic made a number of express warranties to Dr. Small (coincidentally, which are the same as the statements alleged in support of their fraud claim), and that Dr. Small relied upon the express warranties, proximately causing Ms. Byrnes' injuries. *See* Am. Compl. ¶¶ 297, 299–300; Section III.A, *supra.*

Medtronic argues that the Court should dismiss Plaintiffs' amended breach of express warranty claim for four reasons: (1) Plaintiffs have not alleged specifically what affirmations of fact were made by Medtronic to Dr. Small; (2) Plaintiffs have not alleged how any of those statements could have proximately caused Ms. Byrnes' alleged injuries because they have not demonstrated that Dr. Small relied on any of the statements; (3) Plaintiffs have not adequately alleged that the authors of the alleged statements were Medtronic's agents; and (4) Plaintiffs have not alleged that they were in privity of contract with Medtronic.[8]

The Court agrees that this claim as amended is still deficiently pleaded and must be dismissed. Although Plaintiffs

---

**7.** It also appears that Plaintiffs have failed to allege that Dr. Small (or anyone else, for that matter) reasonably relied on the alleged misleading advertising, promotion, or marketing.

**8.** Medtronic also urges this Court to reconsider its previous holding that it would be premature to consider Medtronic's purported disclaimer of warranties at this stage, *see* Doc. 79 at 20–21; *Byrnes I,* 60 F.Supp.3d at 1301 n. 4, but the Court declines to do so, because Medtronic has not set forth a sufficient reason for reconsideration, such as "an intervening change in controlling law," "the availability of new evidence," or "the need to correct clear error or prevent manifest injustice," *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.,* 62 F.Supp.2d 1316, 1331 (M.D.Fla.1999).

have alleged in sufficient detail the affirmations of fact that were made by Medtronic to Dr. Small, as well as the existence of an agency relationship between Medtronic and the authors of those facts, see Section III.A, supra, Plaintiffs have failed to allege facts that would support their allegations that Dr. Small justifiably relied upon any of the express warranties.[9] ,[10] Specifically, in contrast to the allegations supporting their fraud claim, Plaintiffs allege in support of their breach of express warranty claim only that Dr. Small "relied on Defendants' express warranty representations regarding the safety and efficacy of off-label use of Infuse, but such off-label uses, including uses in lumbar fusion procedures, were not effective, safe, and proper for the use as warranted...." Am. Compl. ¶ 299. This vague and conclusory allegation—which lacks any factual support such as how or in what way Dr. Small relied (must less justifiably relied) on any of the alleged express warranties—amounts to nothing more than a "naked assertion[ ] devoid of further factual enhancement," and is therefore insufficient to state a claim for relief, Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quotation marks and citation omitted).

9. It is not entirely settled that justifiable reliance is a required element of a claim for breach of express warranty. See Southern Broadcast Grp., LLC v. Gem Broadcasting, Inc., 145 F.Supp.2d 1316, 1321–24 (M.D.Fla. 2001). Nevertheless, ample law suggests that justifiable reliance is in fact a required element of a breach of express warranty claim, see, e.g., Hobco, Inc. v. Tallahassee Associates, 807 F.2d 1529, 1533 (11th Cir.1987); Thursby v. Reynolds Metals Co., 466 So.2d 245, 250 (Fla. 1st DCA 1984); Weimar v. Yacht Club Point Estates, Inc., 223 So.2d 100, 104 (Fla. 4th DCA 1969), and Plaintiffs do not argue otherwise. The Court will interpret Plaintiffs' failure to respond to this point to mean that they concede this argument. See Brady v. Medtronic, Inc., Case No. 13–cv–62199, 2014 WL 1377830, at *6 (S.D.Fla. Apr. 8, 2014)

Finally, the Court finds that dismissal of this claim should be with prejudice. Notably, Plaintiffs' inadequate allegation regarding Dr. Byrnes' reliance on Medtronic's express warranties is identical to the allegation the Court already found inadequate in Byrnes I. Compare Doc. 2 ¶ 341 with Am. Compl. ¶ 299. The Court is not inclined to grant Plaintiffs leave to amend yet again, when Plaintiffs have already once declined to amend this allegation and have also failed to address in any way Medtronic's legal argument regarding this element in their opposition brief. See Bryant, 252 F.3d at 1163.

### D. Loss of Consortium (Fourth Cause of Action)

Because the complete dismissal of Ms. Byrnes' fraud claim is not warranted, Medtronic's Motion to Dismiss as it relates to Mr. Byrnes' claim for loss of consortium must also be denied.

### IV. CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED**:

1. Medtronic's Motion to Dismiss (Doc. 79) is **GRANTED–IN–PART** and **DENIED–IN–PART**.

("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.") (quotation marks and citation omitted).

10. The Court therefore need not (and does not) address whether Plaintiffs have adequately alleged that they were in privity of contract with Medtronic, including whether such a requirement exists, see Mardegan v. Mylan, Inc., Case No. 10–cv–14285, 2011 WL 3583743, at *6 (S.D.Fla. Aug. 12, 2011) ("Florida law with regard to express warranty claims and the requirement of privity is not [] well-settled.... ").

2. The First Cause of Action is **DISMISSED** to the extent it is based on any alleged concealments or omissions of information and to the extent it is based on the misrepresentations alleged in Paragraphs 267(k), (*l*), and (m) of the First Amended Complaint;

3. The Second and Third Causes of Action are **DISMISSED, with prejudice**; and

4. The Motion is otherwise **DENIED.**

**DONE AND ORDERED** in Tampa, Florida on November 9, 2015.